FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>ANDREAS E. TZORTZIS,<br><br>Debtor. | Case No. 25-20869 |
| PETER C. ANDERSON,<br>UNITED STATES TRUSTEE,<br>Plaintiff,<br>v.<br><br>THOMAS HUTCHINS aka<br>Thomas Hutchins, III,<br>Defendant. | Adv. Pro. 2025-02140 |

**OPINION REGARDING 11 U.S.C. § 110 COMPLAINT FOR (I) FINES, (II) FORFEITURE OF FEES, (III) DAMAGES, AND (IV) INJUNCTIVE RELIEF**

Before: Christopher M. Klein, Bankruptcy Judge

This Petition-Preparer adversary proceeding exposes the tip of a fraudulent iceberg.

The Defendant exploited desperate individuals facing foreclosure by preparing and filing fraudulent bankruptcy petitions primarily for purposes of delay. He bragged of a long history of postponing sale dates to buy homeowners time.

Although the Complaint under the bankruptcy petition-preparer provisions of 11 U.S.C. § 110 focuses on one case in which the Debtor abjured the fraud and performed his Title 11 duties, the Defendant at trial allowed evidence of 52 dubious filings bearing his footprint to be introduced as well as evidence of an unpleaded § 110 violation. The pleadings accordingly are deemed amended to conform to the evidence tried by consent per Civil Rule 15(b)(2).

Hence, in addition to 11 U.S.C. § 110 remedies in favor of Debtor for $13,030 and an injunction, judgment will be entered in favor of the United States for $723,337 ($15,337 in unpaid bankruptcy court filing fees, plus $708,000 for the U.S. Trustee Program) instead of the $13,500 demanded in the Complaint.

The unpaid filing fee award is made as a Chambers v. NASCO/Rainbow Magazine inherent authority sanction for the Defendant's perpetration of a bad faith scheme to cause case filing fees to be incurred but not paid.

The higher judgment is entered pursuant to the Complaint's demand for other relief the Court deems "just and proper" and pursuant Civil Rule 54(c) providing that final judgments after trial "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c), incorporated by Fed. R. Bankr. P. 7054(a).

## Jurisdiction

Jurisdiction is founded on 28 U.S.C. § 1334. An action under 11 U.S.C. § 110 is a core proceeding a Bankruptcy Judge may hear and determine. 28 U.S.C. §§ 157(b)(2)(A) & (O). To the extent it may ever be deemed not to be a core proceeding, the parties are agreed it may be heard and determined by a Bankruptcy Judge.

## Supplemental Findings of Fact[1]

### Defendant's Foreclosure Rescue Business

[1]These findings supplement findings stated orally on the record pursuant to Federal Rule of Civil Procedure 52(a)(1) as incorporated by Federal Rule of Bankruptcy Procedure 7052.

Defendant Thomas Hutchins using the name “Homes for Life” mined lists of mortgage default notices to solicit homeowners facing foreclosure. If a default could not be cured by a loan or thwarted by a bogus transfer of title, he would file skeletal bankruptcy petitions without the filing fee for no purpose other than to obtain the delay attendant to case dismissal process.

He claimed: “We have postponed many sale dates to give the homeowner more time. Been doing this for over 12 years.” Trial Ex. 3 at TH 55.

Hutchins testified that his “team” included Josie Martinez. Hutchins has variously described Martinez as “team member” and as “my assistant.” There is no evidence regarding the existence of other “team” members.

Hutchins admitted that he created the email address “jmhouses@tutamail.com” for use in his business.

Josie Martinez takes directions from Hutchins, uses the jmhouses email address, and is not separately compensated for services performed at Hutchins’ direction.

Searches of public records for “Homes for Life” reveal no such name known to the California Secretary of State and no fictitious business statement in California county records.

Neither Thomas Hutchins nor Josie Martinez are licensed to practice law or sell real estate in the State of California.

## The Tzortzis Situation

Andreas Tzortzis was in foreclosure distress with a recorded Notice of Default (“NOD”) on his home in San Bruno, California. A NOD is the preliminary step to a trustee’s sale under California

nonjudicial foreclosure law.

Based on that NOD, Hutchins telephoned Tzortzis on Friday, December 5, 2024. After introducing himself, Hutchins texted that he would call Monday "to see if you wanna move forward with getting the loan to get property out of default."

In a text message on December 9, 2024, Hutchins referred to Josie Martinez as "my assistant."

The complete 60-page chain of text message communications between Hutchins and Tzortzis is in evidence. (Ex. 3).

For the next several months, Hutchins and Tzortzis communicated by text and phone about how to cure default or, at least, postpone the foreclosure scheduled for March 5, 2025.

Over time, Hutchins presented Tzortzis with three options for rescuing the San Bruno property from foreclosure.

Hutchins' first proposed option was to put the San Bruno property into somebody else's name by transferring title to a third party "investor" with an option later to repay and recover the property. Tzortzis balked because he was unwilling to transfer title to someone he did not know and with no enforceable guarantee of being able to recover title. As he credibly testified at trial, he "threatened to call the cops."

Hutchins thereupon shifted to a second option of obtaining a $75,000 term loan to cure the default. Hutchins would charge $10,000 for preparing paperwork and pay $65,000 to the mortgagee.

Hutchins, however, was unable to obtain the proposed loan because the collateral available to Tzortzis was a South Lake Tahoe property undergoing renovation that was unacceptable to lenders as lacking a working kitchen and bathroom.

As the March 5 trustee's sale loomed, Hutchins proposed a third option – bankruptcy. He texted Tzortzis on February 19 that unless a realtor could list it and postpone foreclosure until sale, "Bk can definitely postponed [sic] it and give you some time." Hutchins' fee would be $2,500 for "consulting."

Tzortzis testified that at that point he was "desperate" and agreed to proceed toward bankruptcy. Hutchins responded "I'll have Josie [Martinez] get the paperwork done for you."

Hutchins assured Tzortzis of success in delaying the sale: "We have postponed many sale dates to give the homeowner more time. Been doing this for over 12 years." (Ex. 3 at TH 55).

## The Bankruptcy Petition

Josie Martinez, at Hutchins' direction, sent Tzortzis three signature pages for a Chapter 13 Petition, Social Security Statement, and Address List Verification by email on February 27, 2025. She did not send any of the other pages of the Petition.

The Martinez email was from the address jmhouses@tutamail, which is the email address that Hutchins testified to having created for use in his business.

Martinez directed Tzortzis to "print, sign, and scan back once docs have been signed."

Tzortzis signed the three signature pages of the documents that had been sent to him and returned them on February 27. He had not, however, seen the remainder of the petition papers.

Thus, Tzortis did not know that the rest of the Petition falsely stated that he resided at 5501 Gilgunn Way, Sacramento, California. Nor did he know that the Petition falsely listed his

telephone number as (424)247-2340. Tzortzis' testimony that he had no knowledge of the false contents of the Petition and no connection with Gilgunn Way or with (424)247-2340 is credible.

After Hutchins confirmed that he had received from Tzortzis the $2,500 demanded as a precondition to filing,[2] Hutchins had Martinez file the Chapter 13 Petition on February 27, 2025.

There was no separate payment for Martinez. The entire fee for Hutchins was $2,500, which he says is a "consulting" fee.

Hutchins, rather than Martinez, informed Tzortzis of the Chapter 13 filing and of Case No. 25-20869 in messages on February 27 and February 28, 2025.

<u>Falsehoods on the Petition</u>

The false residence for Tzortzis (5501 Gilgunn Way, Sacramento, California), and the false (424)247-2340 telephone number become significant in this adversary proceeding because the same fake address and/or phone number have appeared in other fraudulent bankruptcy filings in this District.

A total of fifty-one other Chapter 13 cases in the Eastern District of California, as identified in the evidence admitted at trial, have used some combination of 5501 Gilgunn Way and/or (424)247-2340. (Exs. 22-74).

Nineteen cases used the Gilgunn Way address. Filing fees were not paid in seventeen of them. Unpaid filing fees for them total $5,321 (i.e., 17 x $ 313).

Thirty-two cases used the (424)247-2340 telephone number.

---

[2]Tzortzis paid $2,510, saying the extra was "for coffee." Although it was a gratuity, Tzortzis deserves his $10 back.

filing fees were paid in any of them. Unpaid filing fees for them total $10,016 (i.e., 32 x $ 313).

Each of those other fifty-one cases were dismissed following failures to file required documents, failure to attend meetings of creditors, and other failures to comply with Chapter 13 rules.

Each of those fifty-one cases bear the imprimatur of preparation on "team member" Martinez's computer.

None of those fifty-one cases contain the disclosures and information required of petition preparers by 11 U.S.C. § 110.

Probative of the practice in the Hutchins-Martinez "team" is the statement by Hutchins to Tzortzis: "We have postponed many sale dates to give the homeowner more time. Been doing this for over 12 years."

This Court concludes and finds as fact that "team" member Martinez in the course of "doing this for over 12 years" maintained in her computer a partially completed Bankruptcy Petition template that she used from case to case.

Over the course of those "12 years" Martinez, this Court concludes and finds as fact, fell into the practice of not meticulously re-entering fresh data on each Petition item identifying each new debtor's address and phone number.

This Court finds as fact that all fifty-one cases included in the trial evidence were the product of the Hutchins-Martinez "team" and bore the imprint of Martinez's computer, using the email address created by Hutchins. False addresses and phone numbers make case administration virtually impossible. This result was intended by the Hutchins-Martinez "team."

This Court further finds as fact that each of the fifty-one

fraudulent cases identified in the trial evidence was filed by the Hutchins-Martinez "team" with the specific intention of interposing delay in the form of the bankruptcy automatic stay for "free" because they caused all but two cases to be filed with false representations regarding intent to pay filing fees totaling $15,337.00.

This Court further finds as fact that forty-nine of the fraudulent cases identified in the trial evidence were filed by the Hutchins-Martinez "team" with false representations to the United States that filing fees totaling $15,337.00 would be paid.

This Court concludes the Hutchins-Martinez "team" operated with the specific intention of defrauding the United States by not paying filing fees totaling $15,337.00.

This Court concludes Hutchins and his "team" were gaming the system to take advantage of the bankruptcy automatic stay.

Filing Fee Fraud

The Hutchins-Martinez "team" exploits a gap in the rules to deprive the United States of filing fees incurred but not paid. It is possible to file a Petition electronically, representing the fee will be paid at the time of filing but not actually paying, not intending to pay, and not completing required filings. By the time the case is dismissed with the filing fee unpaid, weeks or even months may have elapsed during which the debtor enjoys the respite of the automatic stay for free.

That is the pattern the Hutchins-Martinez "team" has followed in the fifty-plus cases filed with the Gilgunn Way address and/or the false phone number.

Here is how the scam works. The case filing fee is required to accompany the Petition commencing the case unless there is a request to pay the filing fee by installments or to waive the filing fee. Fed. R. Bankr. P. 1006.

The Clerk of Court, however, must not refuse to accept for filing any petition or other paper solely because it is not in proper form. Fed. R. Bankr. P. 5005(a)(1).

The filing of a voluntary Petition commences a case and constitutes an order for relief. 11 U.S.C. § 301.

A Petition filed under § 301 operates as an automatic stay in most instances. Compare 11 U.S.C. § 362(a) (stay), with § 362(c)(4) (no stay for third case within one year).

A Petition may be filed electronically by unrepresented individuals from remote locations. Fed. R. Bankr. P. 5005. It cannot be rejected for not including the filing fee.

The Mandatory Petition form for individuals, Official Form B101, requires the Petitioner to check one of three boxes stating how the filing fee will be paid: (1) "I will pay the entire fee when I file my petition"; (2) "I need to pay the fee in installments"; or (3) "I request that my fee be waived." Official Form B101, Item 8.[3]

---

[3]The full text of Voluntary Petition item 8 provides:

8. How you will pay the fee:
Box 1: I will pay the entire fee when I file my petition. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a preprinted address.
Box 2: I need to pay the fee in installments. If you

Checking Box 1 amounts to a promise, under penalty of perjury, to pay by a debtor who does not visit the clerk's office. It is mere IOU that is functionally difficult to enforce while the debtor basks in the shelter of the automatic stay. It is guaranteed to be not enforced when the Petition lists a bogus address that prevents direct communication with the debtor. The debtor does nothing; the case is inevitably dismissed.

For $2,500 the Hutchins-Martinez "team" has delivered several months of free rent and has cheated the United States out of the chapter 13 $313 filing fee. For the forty-nine chapter 13 cases bearing the Hutchins-Martinez "Team" imprimatur in which fees were not paid before dismissed, the total loss to the United States is $15,337.00.

The scheme is the essence of bad faith and qualifies as an abuse of process condemned by 11 U.S.C. § 105(a).

Moreover, it follows that the Hutchins-Martinez "team" exposes their individual clients to prosecution for perjury.

As Hutchins bragged to Tzortzis, assuring success in delaying the trustee's foreclosure sale: "We have postponed many

---

> choose this option sign and attach the Application for Individuals to Pay The filing fee in Installments (Official Form 103A).
>
> Box 3: I request that my fee be waived. (You may request this option only if you are filing for chapter 7. By law a judge may, but is not required to, waive your fee, and may do so only if your income is less that 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments.) If you choose this option, you must fill out the Application to Have the Chapter 7 Filing Fee (Official Form 103B) and file it with your petition.

Official Form B101, item 8.

sale dates to give the homeowner more time. Been doing this for over 12 years." (Ex. 3 at TH 55).

Tzortzis Hires Attorney

Tzortzis knew he needed real bankruptcy relief, not just a payment holiday before foreclosure and eviction, and knew the magnitude of his complicated financial problems would require him to follow through in the Chapter 13 case with a lawyer.

Tzortzis hired attorney Zheng "Andy" Liu to represent him in the Chapter 13 case and paid him $3,000.

On March 13, 2025, fourteen days after the petition was filed, Liu obtained a two-week extension of time to file the full Petition. On March 27, the deadline was extended two more days.

Tzortzis' finances were more complex than the garden-variety Chapter 13. Liu recognized a host of problems needing correction, starting with the address and telephone number.[4]

Properly completed schedules and statements were filed April 1, 2025. The $313 filing fee was paid April 7, 2025.

The Tzortzis financial affairs turned out to be too complicated for a Chapter 13 solution, especially since his ability to produce reliable regular income was being impaired by significant health issues.

After two attempts by Liu to produce a confirmable Chapter 13 plan, this Court became persuaded that a Chapter 13 resolution was hopeless. Reasoning interests of creditors and the estate

---

[4]Although venue was incorrect, it was not inconvenient and not fatal to jurisdiction. Tzortzis owned Eastern District real estate. His lawyers practice in both Districts.

would be better served by conversion, than by dismissal, the case was ordered converted to Chapter 7 on June 7, 2025.

Tzortzis hired attorney Duong Si Tran to represent him in the chapter 7 case and has paid Tran at least $2,500.

The Chapter 7 discharge was entered October 21, 2025. The case remains open as administration of assets is incomplete.

Tzortzis has cooperated with the case trustees and United States trustee and, in this Court's assessment, has proven to be honest and credible.

Conclusions of Law

Analysis begins with the Petition Preparer provisions of Bankruptcy Code § 110 and proceeds to the sanctions for Defendant's bad faith scheme to elude case filing fees.

I

11 U.S.C. § 110

A

The Bankruptcy Petition Preparer provisions at 11 U.S.C. § 110, enacted in the Bankruptcy Reform Act of 1994 and revised in 2005, are a remedial statute by which Congress acted to "protect consumers from abuses by non-lawyer petition preparers." Consumer Seven Corp. v United States Trustee (In re Fraga), 210 B.R. 812, 818-19 (9th Cir. BAP 1997).

The remedial purpose is explained in the Collier treatise. 2 COLLIER ON BANKRUPTCY ¶ 110.01 (16th 2026) ("COLLIER").

The House Committee Report preceding the enactment in 1994 explains:

> While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in [an] adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. Rep. No. 103-835, at 56, 103d Cong., 2d Sess. (1994).

The 2005 revisions to § 110 enacted many of the specific remedies at issue in this adversary proceeding.

1

A "bankruptcy petition preparer" ("BPP") is "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1).

A "document for filing" is "a petition or any other document prepared for filing by a debtor" in a United States bankruptcy or district court "in connection with a case under" title 11.

2

The term "bankruptcy petition preparer" is broadly construed in accordance with the remedial purpose.

Section 110 has withstood Constitutional challenge. Ferm v. United States Trustee (In re Crawford), 194 F.3d 954, 960-61 (9th Cir. 1999), cert. denied, 528 U.S. 1189 (2000); Scott v. United States Trustee (In re Doser), 412 F.3d 1056 (9th Cir. 2005); cf. National Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 148-52 (2011)(informational privacy).

The construction of the term BPP is broad. Licensors of software that generated bankruptcy documents for filing from raw

information submitted to a website were BPPs. Frankfort Digital Servs. v. Kistler (In re Reynoso), 477 F.3d 1117 (9th Cir. 2007).

Courts have consistently rejected arguments seeking to avoid BPP status with subterfuges cutting too fine a line by contending their fees are for other services. For example, the author of a "how to" book who then offers free assistance to those who purchase his book is a BPP. Ferm v. United States Trustee (In re Crowe), 243 B.R. 43, 49 (9th Cir. BAP 1999); 2 COLLIER ¶ 110.02[1] (collecting cases).

3

Defendant is a Bankruptcy Petition Preparer

Defendant Hutchins tries to avoid BPP status by asserting his $2,500 fee was for "consulting" services. This Court is not persuaded.

The $2,500 "consulting" fee was the sine qua non precondition for filing the Tzortzis petition. Hutchins testified that if Tzortzis had not paid, then he would have instructed Martinez not to file the petition.

Hutchins directed his "team" member Martinez to prepare the petition. Martinez sent the three signature pages, and only the three signature pages, to Tzortzis for signature. After Tzortzis signed and returned the signature pages, Hutchins told him that the petition would not be filed until after the "consulting" fee was paid. Tzortzis paid Hutchins $2,510 on the same day the petition was filed.[5] He paid Martinez nothing.

---

[5]Tzortzis testified the extra $10 was for "coffee."

Hutchins and his "team" member Martinez are BPPs.

B

11 U.S.C. § 110 Violations

Hutchins violated at least four subsections of § 110, each of which comes with a penalty.

Section 110(l)(1) specifies that a BPP who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure. 11 U.S.C. § 110(l)(1). There are at least ten violations.

Each document, under the plain language of § 110(l)(1), occasions a separate failure, hence a separate violation. Thus, a four-item Petition package constitutes four violations.

1

Failure to Sign Petition Papers § 110(b)(1)

Section 110(b)(1) provides in pertinent part:

> A [BPP] who prepares a document for filing shall sign the document and print on the document the preparer's name and address.

11 U.S.C. § 110(b)(1).

Hutchins did not sign or print his name on the four documents he prepared or caused to be prepared for filing in the Tzortzis case, including: (1) Petition; (2) Social Security Statement; (3) Master Address List; and (4) Address List Verification.

The fine at $500 per violation is $2,000. And, because it has been determined that Hutchins was the BPP in the other 51 cases in evidence, the same fine is imposed for each such case

for a total amount per violation of $104,000.

2

Failure to Place Social Security Number on Petition § 110(c)(1)

Section 110(c) provides in pertinent part:

> (1) a [BPP] who prepares a document for filing shall place on the document, after the petition preparer's signature, an identifying number that identifies individuals who prepared the document.
> (2)(A) ... for purposes of this section, the identifying number of a [BPP] shall be the Social Security account number of each such individual who prepared the document or assisted in its preparation.

11 U.S.C. § 110(c).

Hutchins did not place his social security account number on the documents he prepared or caused to be prepared for filing in the Tzortzis case, including: (1) Petition; (2) Social Security Statement; (3) Master Address List; and (4) Address List Verification.

The fine at $500 per violation is $2,000. And, because it has been determined that Hutchins was the BPP in the other 51 cases in evidence, the same fine is imposed for each such case for a total amount per violation of $104,000.

3

Failure to Furnish Documents Before Signature 11 U.S.C. § 110(d)

Section 110(d) provides that:

> A [BPP] shall, not later than the time at which a document is presented for the debtor's signature, furnish to the debtor a copy of the document.

11 U.S.C. § 110(d).

The evidence adduced at trial establishes that Tzortzis was furnished only with signature pages and was not otherwise

furnished with or aware of the contents of the documents. Although not alleged in the Complaint, the issue was tried without objection. Accordingly, the pleadings are deemed to be amended as an issue tried by consent. Fed. R. Civ. P. 15(b)(2), incorporated by Fed. R. Bankr. P. 7015.

Hutchins did not furnish Tzortzis a complete copy of each of the four documents to be filed in the Petition package, including: (1) Petition; (2) Social Security Statement; (3) Master Address List; and (4) Address List Verification.

The fine at $500 per violation is $2,000.

As the evidence does not illuminate whether the documents were presented to debtors in the other 51 cases, there is not an adequate basis for drawing inferences about the other 51 cases.

4

Failure to Disclose Fee 11 U.S.C. § 110(h)(2)

Section 110(h)(2) provides in pertinent part;

> A declaration under penalty of perjury by the [BPP] shall be filed together with the petition disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor. ... the declaration under this paragraph shall include a certification that the [BPP] complied with the notification requirement under paragraph (1).

11 U.S.C. § 110(h)(2).

Within one year of the petition date, Hutchins received $2,500 from or on behalf of the Debtor, but did not file the required declaration.

The fine for the single violation is $500. And, because it has been determined that Hutchins was the BPP in the other 51 cases in evidence, the same fine is imposed for each such case

for a total amount per violation of $26,000.

C

Trebled Fines 11 U.S.C. § 110(l)(2)

Section 110(l)(2)(D) provides, in pertinent part:

> The court shall triple the amount of a fine assessed under paragraph 1 [failure to comply with subsections [(b)-(h)] prepared a document for filing in a manner that failed to disclose the identity of the [BPP].

11 U.S.C. § 110(l)(2)(D).

The identity of Hutchins as a BPP is not disclosed in any of the documents prepared by or at the direction of Hutchins.

The $236,000 in fines against Hutchins is, by virtue of § § 110(l)(2)(D), trebled to $708,000.

D

Forfeiture of Fees 11 U.S.C. § 110(h)(3)(B)

Section 110(h)(3)(B) provides:

> All fees charge by a [BPP] may be forfeited in any case in which the [BPP] fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g).

11 U.S.C. § 110(h)(3)(B).

Hutchins violated subsections (b)(1), (c)(1), and (h)(2) of Bankruptcy Code § 110.

Accordingly, in addition to the fines, Hutchins shall forfeit and return the $2,510 fee to Tzortzis.

E

Damages 11 U.S.C. § 110(i)

Section 110(i)(1) provides, in pertinent part:

> If a [BPP] violates this section or commits any act

> that the court finds to be fraudulent, unfair, or deceptive, on motion of the United States Trustee ..., and after notice and a hearing, the court shall order the BPP to pay to the debtor:
>
> (A) the debtor's actual damages;
>
> (B) the greater of -
>
> (I) $2,000; or
>
> (ii) twice the amount paid by the debtor to the BPP for the preparer's services; and
>
> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.

11 U.S.C. § 110(i)(1).

The verb "shall" makes the damages award mandatory if the court makes the requisite findings.

Damages are in addition to whatever fines are assessed against the BPP. In other words, § 110(i)(1) damages are mandatory and cumulative.

In this case, BPP Hutchins committed acts that were fraudulent in the filing of a skeletal petition with a false address and telephone number for the sole purpose of imposing delay on a foreclosure and without intending to complete required schedules and statements and intending that the $313 chapter 13 filing fee would not be paid. These acts were fraudulent, unfair, and deceptive. Accordingly, a damage award is mandatory.

The debtor's § 110(i)(1)(A) actual damages are the $5,500 attorney's fees paid to subsequently retained counsel.

The debtor's § 110(i)(1)(B)(ii) damages are $5,020, representing twice the $2,510 the debtor paid to BPP Hutchins.

The cumulative § 110(i)(1) damages are $10,520.

F

Injunction 11 U.S.C. § 110(i)(2)(A)

Section § 110(j)(2)(A) provides in pertinent part:

(A) if the court finds that
(i) a [BPP] has
(I) engaged in conduct in violation of this section or of any provision of this title; ...; and
(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the [BPP] from engaging in such conduct.

11 U.S.C. § 110(j)(2)(A).

It has been determined in this decision that § 110 has been violated in at least ten respects.

BPP Hutchins' own words say it all: "We have postponed many sale dates to give the homeowner more time. Been doing this for over 12 years." Trial Ex. 3 at TH 55.

This Court concludes that injunctive relief is appropriate to prevent the recurrence of such conduct.

II

Bad Faith Filing Fee Avoidance Scheme

It is settled that Bankruptcy Courts have the inherent power to prevent an abuse of process by sanctioning vexatious conduct presented before the court. Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1992).

The Ninth Circuit's Rainbow Magazine decision confirmed that Article I bankruptcy courts have the same implied-power authority that the Supreme Court recognizes as inherent in all courts. Chambers v. NASCO, Inc., 501 U.S. 32, 41 (1991).

The Hutchins-Martinez scheme to prepare and file pro se petitions electronically with the box checked stating that the filing fee will be paid with the petition, intending and knowing that the filing fee will not be paid, is an intentional fraud committed on the Court.

The fraud involves an abuse of process perpetrated in bad faith.

In the cases in evidence and tried by consent in this adversary proceeding, the total unpaid filing fees total $15,337.

The demand in the Complaint for such other relief as the Court deems "just and proper" warrants an award of $15,337 as a Rainbow Magazine inherent authority sanction.

Unlike § 110(l)(4)(A), requiring payment to the United States trustee for deposit in the United States Trustee Fund, the $15,337 award for unpaid case filing fees shall be paid to Clerk, United States Bankruptcy Court, Eastern District of California.

## Conclusion

Judgment will be entered against Defendant Thomas Hutchins in the total amount of $736,367 to be allocated as follows: (1) to the Plaintiff United States Trustee, $708,000; (2) to Andreas Tzortzis, $13,030; and (3) to the Clerk, United States Bankruptcy Court for the Eastern District of California, $15,337.

In addition, Defendant Thomas Hutchins will be enjoined from further acting as a Bankruptcy Petition Preparer.

A separate judgment shall be entered.

Dated: November 25, 2026

United States Bankruptcy Judge